IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LEAH KNEPPAR, on behalf of herself and all those similarly situated, | * |
| | * |
| Plaintiffs, | * |
| v. | Civil Action No. MJM-23-863 |
| | * |
| THE ELEVANCE HEALTH COMPANIES, INC., f/k/a THE ANTHEM COMPANIES, INC. | * |
| | * |
| Defendant. | |

\* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Plaintiff Leah Kneppar ("Plaintiff") filed this putative state-wide class and collective action on behalf of herself and similarly situated employees of The Elevance Health Companies, Inc., f/k/a The Anthem Companies, Inc. ("Defendant") alleging denial of overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), the Maryland Wage Hour Law, and the Maryland Wage Payment and Collection Law. ECF 1 (Compl.). Currently pending is Plaintiff's Motion for Conditional Certification and Court-Authorized Notice under 29 U.S.C. § 216(b) ("the Motion") seeking court-authorized notice of this action to Maryland-based medical management nurses and utilization reviewers employed by Defendant and an opportunity for these employees to opt-in to this action as plaintiffs. ECF 31. Defendant filed a Response in Opposition to the Motion, ECF 32, and Plaintiff filed a Reply in Support of the Motion, ECF 35, and Notice of Supplemental Authority, ECF 38. No hearing is necessary to resolve the Motion. Loc. R. 105.6. (D. Md. 2023). For reasons stated herein, the Motion will be granted.

1

I.      **Background**

Plaintiff was employed by Defendant as a medical management nurse from approximately February 2019 to March 2023, working remotely from her home in Leonardtown, Maryland. Compl. ¶¶ 21–22; Pl. Decl. (ECF 31-3) ¶¶ 2–3. Defendant is a health insurance company that operates office locations in multiple states, including Maryland. Compl. ¶¶ 10–20; Answer (ECF 15) ¶¶ 10–20. Plaintiff alleges that she and similarly situated employees of Defendant were primarily responsible for conducting "medical necessity reviews" for "medical authorization requests submitted by healthcare providers against pre-determined guidelines and criteria for insurance coverage and payment purposes." Compl. ¶¶ 26, 30–31. Plaintiff and similarly situated employees were paid a salary and treated as exempt from overtime pay. *Id.* ¶¶ 34–35. According to the Complaint, Defendant required Plaintiff and similarly situated employees to work long hours to complete all required tasks but did not provide overtime compensation for hours worked in excess of 40 hours per week. *Id.* ¶¶ 36–38. Plaintiff contends that Defendant was aware of employees' unpaid overtime hours because she and others complained about the long work hours and her managers routinely received emails from employees after business hours. *Id.* ¶ 39. Plaintiff alleges that Defendant failed to maintain and preserve adequate records of Plaintiff's and similarly situated employees' work hours. *Id.* ¶ 40.

In the Motion, Plaintiff requests conditional certification of a putative collective of similarly situated employees and court authorization to distribute notices of this litigation to members of the collective and a period for them to opt-in to the case. Pl. Mem. (ECF 31); Pl. Reply (ECF 35). Defendant opposes the Motion, arguing that Plaintiff fails to demonstrate that members of Plaintiff's proposed collective are similarly situated. Def. Opp'n (ECF 32). Defendant argues that the Court should set aside the two-step approach to FLSA collective action certification

commonly employed by courts in this circuit and to make a conclusive determination whether the proposed collective is similarly situated before authorizing notice. *Id.* at 10–16 (citing *Swales v. KLLM Trans. Servs., LLC*, 985 F.3d 430 (5th Cir. 2021)). Plaintiff argues that the Court should adhere to the two-step certification process for FLSA collective actions and that she has met the lenient burden necessary to justify court-authorized notice to the proposed collective.

**II.     Applicable Legal Standard**

The FLSA requires employers to pay non-exempt employees at a rate one-and-one-half times their regular pay rate for any hours worked longer than forty hours in a workweek. 29 U.S.C. § 207(a). A non-exempt employee may, on her own behalf or on behalf of other "similarly situated" employees, file an action against an employer to recover unpaid overtime compensation and other forms of relief. 29 U.S.C. § 216(b). The statute establishes an "opt-in" scheme whereby similarly situated employees "notify the court of their intentions to be a party to the suit." *Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762 (D. Md. 2008) (citing *Camper v. Home Quality Mgmt., Inc.*, 200 F.R.D. 516, 519 (D. Md. 2000)). The remedial purposes of FLSA collective actions have been summarized as follows:

> First, collective actions allow plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources." . . . Second, collective actions allow the courts efficiently to resolve common issues in one proceeding. . . . Third, FLSA collective actions promote enforcement of the law by empowering employees to "join in their litigation so that no one of them need stand alone in doing something likely to incur the displeasure of an employer."

*Jackson v. Am. Elec. Warfare Assocs., Inc.*, Civ. No. TDC-22-1456, 2023 WL 5154518, at *2 (D. Md. Aug. 10, 2023) (quoting *Hoffman–La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)), and *Pentland v. Dravo Corp.*, 152 F.2d 851 (3d Cir. 1945)).

If a plaintiff pursues a collective action against an employer, "they may seek court-approved notice to inform similarly situated employees that they may join the litigation." *Santos*

*v. E&R Servs., Inc.*, Civ. No. DLB-20-2737, 2021 WL 6073039, at *2 (D. Md. Dec. 23, 2021) (citing *Hoffman–La Roche*, 493 U.S. at 169–70). The district court, in its discretion, may "facilitate[e] notice to potential plaintiffs" in appropriate cases. *Camper*, 200 F.R.D. at 519 (quoting *Hoffman–La Roche*, 493 U.S. at 169); *see also Biscardi v. Gov't Emps. Ins. Co.*, Civ. No. GJH-21-2240, 2023 WL 155238, at *2 (D. Md. Jan. 11, 2023) ("Whether or not to conditionally certify the collective action is a matter of court discretion.").

Courts in this circuit have generally adopted a two-stage certification process for FLSA collectives, which has been widely employed outside of this circuit. *See, e.g.*, *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 566 (D. Md. 2012); *Santos*, 2021 WL 6073039, at *2; *Hernandez v. KBR Servs., LLC*, No. 3:22-CV-530-HEH, 2023 WL 5181595, at *5 (E.D. Va. Aug. 11, 2023). At step one, the plaintiff must "make a preliminary factual showing that a similarly situated group of potential plaintiffs exists." *Quinteros*, 532 F. Supp. 2d at 771 (internal quotation marks and citations omitted). This preliminary showing requires "more than 'vague allegations with meager factual support[,]'" *Santos*, 2021 WL 6073039, at *3, but may be satisfied by a "modest factual showing" that a group of similarly situated employees "were victims of a common policy or plan that violated the law." *Choimbol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557, 564 (E.D. Va. 2006); *see also Butler*, 876 F. Supp. 2d at 566 ("[A] group of potential FLSA plaintiffs is 'similarly situated' if its members can demonstrate that they were victims of a common policy, scheme, or plan that violated the law."). This modest showing may be made by affidavit, declaration, or "'substantial allegations' in the pleadings." <u>Biscardi</u>, 2023 WL 155238, at *2 (quoting *Lancaster v. FQSR*, Civ. No. TDC-19-2632, 2020 WL 5500227, at *2 (D. Md. Sept. 11, 2020)). "Because the record is sparse at the notice stage," the standard courts apply at the notice stage has been deemed a "fairly lenient" one. *Lancaster*, 2020 WL 5500227, at *3 (citation omitted). "Following

discovery, courts proceed to the second stage, whereby they 'engage[] in a more stringent inquiry" to determine whether plaintiffs have met the burden of showing that opt-in participants are in fact similarly situated, such that moving forward with the collective action is appropriate." *Biscardi*, 2023 WL 155238, at *2 (quoting *Santos*, 2021 WL 6073039, at *2). This post-discovery determination is typically made in response to a defendant's motion for decertification. *Id.* !

Defendant argues that this Court should reject the two-step approach to collective action certification and instead "deny[] certification outright" or order discovery on whether the putative collective is similarly situated before notice issues to collective members. Def. Opp'n at 17–18. Defendant endorses the approach to FLSA collective action notice adopted by the U.S. Court of Appeals for the Fifth Circuit in *Swales*, 985 F.3d 430. In *Swales*, the Fifth Circuit rejected the "lenient, step-one 'conditional certification[]'" commonly employed by district courts and held that, at the outset of a putative collective action under the FLSA, the court "must rigorously scrutinize the realm of 'similarly situated' workers" to "determine whether the requested opt-in notice will go to those who are actually similar to the named plaintiffs." 985 F.3d at 434. Before authorizing notice, the Fifth Circuit held, "a district court should identify . . . what facts and legal considerations will be material to determining whether [the members of the putative collective are] 'similarly situated[]'" and then "authorize preliminary discovery accordingly." *Id.* at 441.[1] Plaintiff argues that the Fifth Circuit's holding in *Swales* is "incompatible with the remedial

---

[1] The Court notes that the U.S. Court of Appeals for the Sixth Circuit also recently rejected the lenient standard courts have commonly applied at the notice stage. *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F. 4th 1003, 1011 (6th Cir. 2023). In *Clark*, the Sixth Circuit held that, "for a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves." *Id.* The standard adopted in *Clark* requires more than a "modest showing" of similarity and permits a court to order discovery relevant to the question of similarity before facilitating notice. *Id.* at 1010–11. *Clark* is not binding on this Court, and this Court declines to follow it in this case. The "strong likelihood" standard may require initiation of discovery on the question of similarity, which may unduly delay notice to potential plaintiffs.

5

purpose of the FLSA and the importance of providing timely and accurate notice of an action early in the case." Pl. Mem. at 8 n.6; *see also* Pl. Reply at 3.

The Court agrees with Plaintiff that, in the typical putative collective action brought under the FLSA, the preliminary discovery that would be necessary to satisfy the rigorous standard adopted in *Swales* would risk unduly delaying notice to potential plaintiffs. Furthermore, as the Sixth Circuit recognized in *Clark*, a district court, as a practical matter, cannot be expected to make a conclusive determination of whether members of the putative collective are "similarly situated" without the participation of these employees the action. 68 F. 4th at 1010. And their participation in the action cannot be expected until they receive effective court-authorized notice. "Because the record is sparse at the notice stage," the standard employed to assess the sufficiency of a plaintiff's showing at this stage is properly lenient. *Jackson*, 2023 WL 5154518, at *2–3 (post-*Swales* decision employing two-step certification process). In short, "[t]he two-step process is appropriate because a modest inquiry into the propriety of conditional class certification before issuing court-approved notice is consistent with the purposes of the FLSA collective action provision." *Id.* at *3.

Although the U.S. Court of Appeals for the Fourth Circuit has yet to adopt or reject the two-stage notice and certification process, judges of this Court and sister courts within this circuit have long adhered to this approach, and most who have had occasion to consider *Swales* have declined to adopt it. *See Santos*, 2021 WL 6073039, at *3–4 (noting that *Swales* "is not binding" in the District of Maryland and declining to follow it); *Midkiff v. Anthem Cos.*, 640 F. Supp. 3d 486, 493 n.7 (E.D. Va. 2022) (citing post-*Swales* cases from district courts in the Fourth Circuit that apply the two-step approach). At least one judge in this circuit has adopted the *Swales* approach, *see Mathews v. USA Today Sports Media Grp., LLC,* No. 1:22-CV-1407-TSE, 2023 WL 3676795, at *3 (E.D. Va. Apr. 14, 2023); however, subsequent opportunities to depart from the

6

two-stage process in this circuit have generally been declined. *See Firestone v. Food Concepts, LLC*, No. 2:22-CV-04020-BHH, 2024 WL 578454 (D.S.C. Feb. 13, 2024) (rejecting *Mathews* as an "outlier"); *Hernandez v. KBR Servs., LLC*, No. 3:22-CV-530-HEH, 2023 WL 5181595, at *6 (E.D. Va. Aug. 11, 2023) ("[T]he Court agrees . . . that [*Mathews*] is an extreme outlier."); *Jean-Francois v. Smithfield Foods, Inc.*, No. 7:22-CV-63-JCD, 2023 WL 4424068, at *3 (E.D.N.C. July 10, 2023) (noting the existence of then-recent *Mathews* opinion but proceeding with the two-step approach); *Jones v. Casablanca*, No. 6:22-CV-2307-TMC, 2023 WL 4998570, at *2 (D.S.C. May 24, 2023) (declining to follow *Matthews* and *Swales*). This Court declines to depart from the two-stage approach to FLSA notice and collective action certification that has been consistently employed in this district.

**III.    The Proposed Collective**

Plaintiff requests, for purposes of court-authorized notice of this action, conditional certification of a putative collective defined as follows:

> All persons who worked as Medical Management Nurses, Utilization Management Nurses, Utilization Managers, Utilization Review Nurses, or in similar job titles who were paid a salary and treated as exempt from overtime laws and were primarily responsible for performing medical necessity reviews for Defendant in Maryland at any time since three years prior to the filing of this Complaint through judgment.

Compl. ¶ 43. Defendant argues that Plaintiff's Motion should be denied even if the Court employs a two-stage approach to collective certification and a lenient standard at the notice stage. Def. Opp'n at 16–22. It contends that Plaintiff fails to show that she and the other members of the putative collective are similarly situated because the employees included vary by title, team membership, levels of seniority and supervision, levels of interaction with healthcare providers, types of guidelines and criteria they employ to do their work, and types of training they receive and provide.

7

The Court must determine whether Plaintiff has made an at least modest showing that the above-described group of employees are similarly situated to Plaintiff and that she and the putative collective members were subject to a common policy or plan by Defendant that violated the FLSA. *See Butler*, 876 F. Supp. 2d at 566. "[T]his inquiry will be limited . . . because courts are not to 'delve into the merits' of the case[]" at the notice stage. *Biscardi*, 2023 WL 155238, at *4 (quoting *Blake v. Broadway Servs., Inc.*, Civ. No. CCB-18-086, 2018 WL 4374915, at *3 (D. Md. Sept. 13, 2018)).

"Plaintiffs are similarly situated when they raise a similar legal issue as to coverage, exemption, or nonpayment of minimum wages or overtime arising from similar job requirements and pay provisions." *Calderon v. Geico Gen. Ins. Co.*, Civ. No. RWT-10-1958, 2011 WL 98197, at *4 (D. Md. Jan. 12, 2011) (quoting *Robinson v. Empire Equity Grp., Inc.*, Civ. No. WDQ-09-1603, 2009 WL 4018560, at *2 (D. Md. Nov. 19, 2009)). "Stated otherwise, plaintiffs are similarly situated when there is a demonstrated similarity among individual situations, and some factual nexus that binds the named plaintiffs and potential class members together as victims of a particular alleged policy or practice." *Yeibyo v. E-Park of DC, Inc.*, Civ. No. DKC-07-1919, 2008 WL 182502, at *7 (D. Md. Jan. 18, 2008) (citation omitted). They "must be similarly situated with respect to their job requirements and with regard to their pay provisions[,]" but "the positions need not be identical, only similar." *Id.* (citation omitted). Factual differences among the members of the putative collective are "not fatal" at the notice stage. *O'Quinn v. TransCanada USA Servs., Inc.*, 469 F. Supp. 3d 591, 604–05 (S.D. W. Va. 2020); *see also Houston v. URS Corp.*, 591 F. Supp. 2d 827, 832 (E.D. Va. 2008) ("similarly situated" standard does not require that there be "no differences among class members"). "[G]ranular differences in job titles and duties" cannot defeat a preliminary showing of similarity sufficient to justify conditional certification. *Learing v.*

*Anthem Cos.*, No. 21-cv-2283-KMM/JFD, 2022 WL 594378, at *5 (D. Minn. Feb. 28, 2022). Rather, at the notice stage, a plaintiff's showing of similarity should "be considered at a higher level of abstraction." *Midkiff*, 640 F. Supp. 3d at 495 (citation omitted).

Here, the Court finds that Plaintiff has made an adequate showing that the employees in the proposed collective are similarly situated for purposes of conditional certification. Although members of the proposed collective have different job titles, declarations and transcripts attached to Plaintiff's motion and reply brief demonstrate that the collective members have shared the same essential or primary job duties. In her declaration, Plaintiff attests that, between 2019 and 2023, she worked for Defendant as "a utilization reviewer, also known as a medical management nurse," under the official title Nurse Medical Management II. Pl. Decl. (ECF 31-3) ¶ 2. In this role, Plaintiff primarily conducted "utilization reviews, also known as medical necessity reviews" of health insurance authorization requests from healthcare providers, in which the authorization requests were assessed against "pre-determined guidelines and criteria for insurance coverage and payment purposes." *Id.* ¶ 6. Plaintiff was paid a salary, was not required to keep track of the hours she worked, and regularly worked more than 40 hours per week without receiving overtime compensation. *Id.* ¶¶ 11–14. Plaintiff participated in group trainings with other medical management nurses and worked as part of a team of approximately eight or nine other medical management nurses. *Id.* ¶¶ 4, 15. In her declaration, Plaintiff identifies by name several other medical management nurses who "performed similar job duties as [Plaintiff]" and "did not receive overtime pay." *Id.* ¶ 16.

Plaintiff's immediate supervisor, Halcyone Morgan, testified that the primary responsibility of members of her team was to conduct medical necessity reviews, and they were salaried, exempt from overtime pay, and not required to record their hours worked. Morgan Dep.

(ECF 31-4) at 8:17–9:11, 62:17–24, 84:23–85:13. Dr. Gonzalo Suarez, Defendant's Director for Healthcare Management and Morgan's immediate supervisor, used the terms "utilization management nurse" and "nurse medical management" interchangeably during his deposition testimony. Suarez Dep. (ECF 31-5) at 35:14–21. Gina Russell-Reynolds, a Director for Healthcare Management Services at one of Defendant's subsidiaries in Maryland, testified that reviewers on the utilization management team shared the same primary role, conducting utilization reviews, Russell-Reynolds Dep. (ECF 31-6) at 35:13–17, and this role had not substantively changed since June 2003, *id.* at 46:6–20. She also testified that she was unaware of other job titles used by Defendant for utilization reviewers beyond those in the nurse medical management family. *Id.* at 46:21–25. Nurse medical management positions are salaried and not paid overtime, and utilization reviewers in Maryland were not required to track their hours worked. *Id.* at 40:8–41:6, 72:2–11. As Defendant's Regional Director of Clinical Operations, Sharon Robinson oversaw utilization reviewers in several East Coast markets and testified that the primary duty of utilization review nurses was to conduct medical necessity reviews, irrespective of variation among these nurses with respect to the guidelines or criteria used, level of seniority, level of interaction with healthcare providers, or other factors. Robinson Dep. (ECF 35-4) at 66:24–70:15.

   Defendant points out that Plaintiff exclusively worked at home and argues that the Court should not rely upon her declaration because she lacks personal knowledge about both other nurses in the proposed collective and about the guidelines they used to conduct their work. Def. Opp'n at 17–18. Defendant is correct that declarations must be based on personal knowledge, but personal knowledge does not necessarily require personal observation. *See Midkiff*, 640 F. Supp. 3d at 495. Moreover, Plaintiff's statements are adequately corroborated by testimony from managers indicating that nurses assigned different titles bore the same primary responsibilities, were treated

as salaried employees exempt from overtime pay, were not required to track their number of hours worked, and were therefore subject to the same employment practices by Defendant relevant to Plaintiff's FLSA claim.

This Court finds that the Plaintiff has made a sufficient preliminary showing that employees in the putative collective are similarly situated. As discussed, her burden at this stage is a lenient one, *see Hoffman-La Roche*, 493 U.S. at 170, and she has gone beyond simply alleging similarity in her Complaint, having attached declarations and depositions that bolster her claim, s*ee Quinteros*, 532 F. Supp. 2d at 772. This conclusion is consistent with several other cases in which conditional certification was granted for similarly defined putative collectives in FLSA suits brought against Defendant in other districts. *See, e.g.*, *Learing*, 2022 WL 594378, at *5; *Midkiff*, 640 F. Supp. 3d 486; *Lazaar, v. Anthem Cos.*, No. 1:22-cv-03075-JGK, 2023 WL 4113034 (S.D.N.Y. June 22, 2023).

### IV.   Content and Method of Notice

Plaintiff has presented for the Court's consideration a notice form and draft communications she proposes for distribution to the members of the putative collective. Pl. Mem. at 16; Pl. Exhs. E, F & G (ECF 31-7, 31-8 & 31-9). She asks that the Court authorize a notice period of 60 days; distribution of the notice by U.S. mail, email, and text message; and reminder notices by the same means 21 days before the end of the notice period. Pl. Mem. at 16. Plaintiff argues that more than one method of notice is necessary in case putative collective members have moved or no longer work for Defendant, and that it is standard for courts to approve the sending of reminder notices. *Id.* at 17–18; Pl. Reply at 12. To permit distribution of the notice to members of the putative collective, Plaintiff requests that the Court order Defendant to disclose the names, contact information, and dates of employment of those employees. Pl Mem. at 16; Pl. Proposed

Order (ECF 31-10). Defendant argues that Plaintiff's proposed method of notice is excessive and invasive and takes issue with the substance of the notice, claiming it is overly vague and "stilted in [Plaintiff's] favor." Def. Opp'n at 22–24.

Courts "have broad discretion regarding the details of the notice sent to potential opt-in plaintiffs." *Firestone*, 2024 WL 578454, at *6 (quoting *Regan v. City of Charleston*, No. 2:13-cv-3046, 2014 WL 3530135, at *7 (D.S.C. July 16, 2014). Notices are expected to be "timely, accurate, and informative," so that potential plaintiffs "can make informed decisions about whether to participate. *Id.* (quoting *Hoffmann-La Roche*, 493 U.S. at 170). Further, "[t]he goals of the notice are to make as many potential plaintiffs as possible aware of the action and their right to opt in without devolving into a fishing expedition or imposing undue burdens on the defendants." *Lazaar*, 2023 WL 4113034, at *5. Yet courts "must take care to avoid even the appearance of judicial endorsement of the action." *Hoffman-La Roche*, 493 U.S. at 174.

The Court also that Plaintiff's proposed notice form and communications are appropriate. The notice form makes clear in bold letters at the top that "***THE COURT HAS NOT TAKEN ANY POSITION ON THE MERITS OF THE PLAINTIFF'S CLAIMS, OR THE DEFENDANT'S DENIALS AND DEFENSES, IN THIS CASE***." Pl. Exh. E. Further, the notice form states that Defendant denies Plaintiff's allegations and maintains that persons in the putative collective were salaried and properly classified in accordance with the law, *id.*, as reflected in Defendant's Answer to the Complaint. The notice form accurately indicates that participation in the litigation may require testifying, taking part in discovery, or being deposed, but that potential plaintiffs may abstain from participation in the litigation by simply ignoring the notice. Pl. Exh. E. Plaintiff's proposed text message adequately provides notice of the litigation with a link to the notice form. Pl. Exh. F. However, the proposed text message states, "This message was approved by the United

States District Court for the District of Maryland," without making clear that the Court has not taken a position on the merits of the case. *Id.* The Court will direct that this sentence in the text message be edited to state, "The United States District Court for the District of Maryland has authorized this message but has not taken any position on the merits of the case." Additionally, the Court finds that the distribution of reminder notices by all three methods of distribution would be excessive and unnecessary for effective notice, and may give the appearance of judicial endorsement of the litigation. The Court notes, however, that the authorization of reminder notices is not without precedent, *see Sarahong v. Smartlink, LLC,* Civ. No. BPG-22-328, 2022 WL 2065930, at *3 (D. Md. June 8, 2022), and may help ensure that notice of the case and the opportunity for potential plaintiffs to opt-in are effective. Accordingly, the Court will authorize reminder notices to be sent by email only, with the content of Plaintiff's proposed reminder letter (Pl. Exh. G).

In sum, the Court shall direct Defendant to disclose to Plaintiff names, contact information, and periods of employment for members of the putative collective; authorize initial distribution of Plaintiff's proposed notice form to collective members by U.S. mail, email, and text message; and authorize reminder notices by email only 21 days before the end of a 60-day notice period.[2]

## V.     Conclusion

For reasons stated herein, Plaintiff's Motion for Conditional Certification and Court-Authorized Notice under the Fair Labor Standards Act (ECF 31) is GRANTED IN PART, and

---

[2] The Court notes Defendant's request that, if conditional certification is granted, the parties be permitted "21 days to confer about and present, if possible, a jointly proposed notice and distribution plan,[] after which appropriately limited contact information for the class that this Court defines would be due for exchange within 30 days." Def. Opp'n at 24. The proposed conference period is not necessary and would only cause further delay in the issuance of notices to the putative collective. Plaintiff's proposed initial notice and reminder communications are adequate.

Plaintiff's proposed notice and distribution plan is APPROVED with the modifications described herein. A separate Order will issue.

| | |
|---|---|
|    3/18/24 |    /S/ |
| Date | Matthew J. Maddox |
| | United States District Judge |